All right, welcome back, and we will go ahead and move to argument in Diamond versus Collinson case numbers 25-2393 and 25-2561. I take it where you've got Mr. Franz here. All right, go ahead. Thank you, Robert Franz for Officer Weatherby. Officer Weatherby was the person that shot the beanbag shotgun. So the way that I view the case, and there's the comments that we all know on Interdoctory Appeals now, you've all dealt with qualified immunity, so you know the initial battle was the facts. What facts can we review? What facts can we not review? So I want to start off with we're using undisputed facts for our position, and our position basically is can you shoot a beanbag round at a person's abdomen, and it causes a bruise, in order to disarm him so that you can take custody of him? What's odd about this case is you have a death, tragic, right? Yes. But there's no challenge to the actual death. It's the beanbag and the preliminary actions, the taser, I guess. Correct. And that's all we're looking at here. I didn't handle the summary judgment. So the person that handled that case initially had Boyce as a appellant, and Boyce is the one that fired the round. But Judge Simon found there was a question of fact as to whether or not the gun was being pulled out. That's a question of fact I have to accept. I can't challenge that on Interdoctory Appeal. Unless it's blatantly contradicted by the record, or there's not one iota of evidence. The two doctors' testimony, that expert said that the gun, the hand was still in his kangaroo pocket, that's an example of a fact I can't challenge. So I drop the appeal by Boyle's, and we'll just- Has that appeal been dismissed? I checked the doctor, then- Yeah, and I just didn't know how to do it. Oh, okay. I just figured I could say it. Just need to file a Rule 41 motion under the Federal Rules of Appellant Procedure. So that, okay, so that is still pending, and that will be, it's just not on appeal, it's not as part of this case. Correct. Okay. All right. So in this case, the undisputed facts that I've taken into account is he was intoxicated, and it's a .226, highly intoxicated. You know, that's two and a half times legal limit. He was suicidal. He had a loaded gun, Glock, in his kangaroo pocket. Now, you know, how do you describe this threat? What do you call this threat? Immediate, pending, or whatever. I have in my kangaroo pocket here a weapon, and we know a kangaroo pocket. I can merely go like this and shoot you. Judge Simon said that's not an immediate threat. Well, I disagree, but I can accept that that's not an immediate threat. It is some type of threat. And for me to take custody of you under one of three statutes in Oregon, I have to disarm you, because if I'm taking you in on police officer's mental hold, I'm taking you to the hospital. If I'm taking you under the mandatory arrest for an intoxicated suicide person, that was the issue in Granger versus Inslee, a case this Ninth Circuit held, in which it said when an officer does not take an intoxicated suicide person to a treatment facility, you're liable under that statute. And so that's why I cited that. And then the third one is in Oregon, you can use reasonable force to prevent a suicide. So for us to use reasonable force to prevent a suicide, we have to get the gun away from him. So the question is, when you're in that position, it's a standoff. And then I took the statements made by Mr. Diamond, which are recorded, which is very helpful because we hear his own voice, and his statements is that this is going to end two ways. I get shot, you get shot. I take 10 steps, you know it's in my left hand. I take 15 steps and you'll do it for me. I'd rather have you do it for me. It's going to end today on my terms. So then he refused to obey the commands. The first conversation, he's asked, will you remove your hands? And he says, I cannot do that. And the very last part of the conversation was, it ain't going to happen. What would you tell the police officers in Oregon that they can do at that time? And that's what we're asking you just to tell us. Can I deploy that beanbag and put it around there? And hopefully it hits him. That's actually not what you're asking. You're asking a more basic question. I think you should frame it more for your client's interests, which is, is it clearly established that he can't fire a beanbag? I mean, unless you want us to decide the underlying constitutional question. I'll take either one. But thank you for clarifying, which is the real basis. Because that's part of the problem I had. And I'll save some of my questions because the district court, I think, might have misapplied some of the, the district court. And I'd be interested in your response to this. Some of these cases, Hernandez, Blankenhorn, Stute, were not, didn't actually decide the constitutional question. Am I correct on that?  So it just said the officers weren't entitled to qualified immunity. Right. Or the cases that we cite, they were entitled to qualified immunity. And also my brief, I cited to you two current district court cases allowing the use of beanbags. So we even have district courts still applying beanbags. The one case- By the way, I might have given you the wrong set of cases, because I think actually it's Glenn, Diorrele, Cruz. I think the ones I was giving you were for Collins and- I knew what you're referring to. Okay. The four that I listed in my brief and I took on. Yeah. And so then, and that seems to be the way the courts, I don't want to say are dodging the issue, but they're just saying it's not clearly established. So then I cite you the Cooper case in the Las Vegas case that current district courts are allowing the use of beanbag. And the Cooper case is interesting because the guy had a weapon in his jacket. You know, he had that weapon in his jacket, took off his jacket and held it up. And they still said you can deploy the beanbag rounds because he had access to the weapons. That's why Cooper's pretty interesting. Okay. So I think it's just- No, because I- Oh, you're putting it all on the table here. All right, go ahead. And my partner- Go ahead. So, and that's why those cases are so important is because if the judges can't agree, if district court judges can't agree, then how is the police officer to agree? So that's all. Thank you. Thank you. Okay. Good morning. May it please the court. My name is Scott Sequel. I represent Sergeant Sean Collinson, who is one of the appellants in this matter. I would like to attempt to reserve one minute for rebuttal, although my time is limited here. Does the record show he was, was he wounded by friendly fire? You're correct. He was hit in the shoulder and he was injured as a result. So he's okay now? Correct. Which is an argument I would make. One of the facts that indicates this was not a foreseeable result, not a planned result for Officer Boyce to fire. Sergeant Collinson didn't intentionally put himself in the line of Officer Boyce's fire. But one of the officers was also hit by the, by Mr. Diamond or no? It was only friendly fire. Mr. Diamond did not fire. There's, there's no evidence to indicate Mr. Diamond fired. He tried to get the gun out, but because of the fact that it was an extended magazine, it got caught up in the material of the kangaroo pocket. That is certainly the defendant's version of the facts. The trial court did find there was a question of fact as to whether or not the gun came out. And that is why that issue is not on it. So forgive me, I'm trying to go back. So Officer Collinson, is he, is it both the use of the taser is an issue and also whether he's liable for Boyce's force? Sure. Also the use of the beanbag rounds, all three of those. Oh, okay. And so the, the Collinson acknowledges that he did direct the beanbag rounds to be used. I see. So he would certainly be an integral participant in that nonetheless. But you say he's not an integral participant for the, for Boyce's use of force. Absolutely. Okay. Absolutely. And that's because of the Peck case. And the Peck case from the county standpoint is precisely on point. That is a case where five officers surrounded a hostile situation of a person who was armed with a gun. Or I guess there was a question of fact, whether he actually had the gun or reach for the gun. Two officers ended up firing, three officers did not. And what the court held was that there's no essentially team effort theory here. You have to show direct personal involvement and that the three officers were not integral participants merely by providing lethal cover. And that's precisely what Officer Boyce did here. That's all he did. He provided lethal cover. In addition, one of the cases cited by plaintiffs is Nicholson versus Los Angeles. And in that case, even though that predates Peck, that case, the court articulates that when an independent decision maker makes their own neutral objective decision, that breaks the causal chain for integral participation. And again, that's precisely what happened here. Officer Boyce was his own independent decision maker. He made the decision on his own to use lethal force. Again, Sergeant Collinson would argue that that force was entirely reasonable under the circumstance, but accepts that there's a question of fact as to that. So, but still, the question is, there was no direction, there was no plan. And the mere fact that a shooting might occur, again, as the court articulated in Peck, is not enough here. That's a not enough foreseeability. There has to be something more. There has to be foreseeability that an unconstitutional shooting will occur. And from Sergeant Collinson's standpoint, there was no reason to know that. They were dealing with an armed subject outdoors in a crowded campground. This was not something that they could merely walk away from or leave. This was a person who, over the course of two days, indisputably forced a police response. He was a former law enforcement officer. His family had been calling for 48 hours, asking for a response every time the Clackamas County Sheriff's Office said no, until, and only until, it was reported that he actually fired his gun in this campground. And at that point, there was no choice but to respond. Again, this was seemingly what Mr. Diamond wanted, was to force this encounter. Under these circumstances, lethal backup is not unreasonable, let alone unconstitutional. And for that simple reason, for those simple reasons, Sergeant Collinson is not liable for the lethal force. I'm happy to get more into the question about why the beanbag round was reasonable. Again, co-counsel has already addressed that. What about—oh, go ahead. So as I understand it, you're asking us to hold that the district court erred in denying qualified immunity to Officer Weatherby for the use of the beanbag, and also to—erred in denying qualified immunity to Sergeant Collinson as an integral participant in the death. Correct. Okay. Yes. I confess when I started in this case, and the confusion wasn't as bad as all those COVID cases, but I lost track of who was with whom. So let me make sure I understand.  Sergeant Collinson is with the county sheriff. Correct. Is the county still a party to the case? That's a good question. They're not a party to this appeal. I'd have to go back and recall the precise claims at issue. If there's a state law claim, they would still be a party to that. The other two officers were with the city, and I know the city itself and Officer Boyes are either not part of the appeal or are dropping the appeal. So that's why that one is just about Officer Weatherby, who was the beanbag shooter. Is that correct? You're correct. Okay. So as to the other issue that has not been addressed, is the use of the taser. Now, I would submit to the court, certainly if the use of the beanbag round was reasonable. Taser didn't do anything. So how do we evaluate that? I mean, is it just the fact that they tried to? I mean, it's interesting, because if you shot at him and you missed, you wouldn't have a 1983 claim, would you? Or would you still have it? I think theoretically you could still bring a claim for the use of force. However, there may not be damages associated with it. But in this instance, the taser I would submit is either in a lesser degree of force than the beanbag. And again, under the circumstances, particularly there's no dispute that Mr. Diamond, we have it recorded. Mr. Diamond, in response to the beanbag, essentially made a threat. He said, if you effing do that again. And at that point, again, Sergeant Collinson is within round range of a taser, which is 10 to 15 feet. He has no other weapons. He'd approached with his essentially empty handed to try to gain compliance from Mr. Diamond. And the attempted use of the taser was perfectly reasonable under those circumstances. And then he advanced in order to use his hands to try and prevent Mr. Diamond from doing whatever he was trying to do. Exactly. His last ditch effort after it was clear that the taser didn't work, Sergeant Collinson found himself in a position where he again had only split seconds to make a decision. He had Mr. Diamond still armed with that gun in his hand, having previously discharged it that day in the campground. And he made the decision to attempt, whether you might call this a foolish decision or not, he made it's a lawful decision. He tried to wrap up Mr. Diamond's arm so he couldn't pull that gun out. Unfortunately, he wasn't able to. At least that's Sergeant Collinson's perception. Regardless, the shooting occurred and both Mr. Diamond and Sergeant Collinson were hit. Okay. Okay. Thank you. Thank you.  Good morning. Excuse me. Good morning, Your Honors, and may it please the court. Atul Acharya for the appellee, Chelsea Diamond, personal representative of the estate of Doug Diamond. Whether the officers here should get qualified immunity turns on the facts. If Diamond had fired his gun once already, as my friend insists, if he had put bystanders There is a matter of constitutional law with regard to whether as a matter of law in this circuit, officers may deploy beanbags and tasers in circumstances where they are confronting an individual they know to be armed. No, Your Honor, they may not. The mere fact of possessing a gun, this court has said over and over again, is not enough to pose an immediate threat. I'm not sure you and I are talking about the same thing. I mean, the question is, the use of a beanbag and a taser, we've defined as being less lethal force. So there's sort of a pyramid scheme here. And there is some suggestion in some of our cases, D'Orly probably is the strongest for you, that the use of a beanbag in circumstances like this is impermissible. And the Supreme Court has cautioned us about whether or not D'Orly should be extended any further than it's facts. I think, just a second on D'Orly. I think what the Supreme Court said about D'Orly, I think it was in Mullaney or Kissela, the Supreme Court said that it by itself perhaps doesn't clearly establish as much as the court read it to in that case. But it didn't say that D'Orly is no longer good law or should be limited to its facts. It's just about its reach as far as clearly established law. But I thought D'Orly, so this was my confusion about some of these. They didn't find an underlying constitutional violation. They just said you're not entitled to qualified immunity. Maybe you'd say that's the same thing because they're saying that it's... That's not quite right, Your Honor. Okay, that's what... In D'Orly, the court found for the plaintiff in all these cases. No, but there's a difference between finding an underlying constitutional violation and saying you're not entitled to qualified immunity. I guess your point is if you're not entitled to qualified immunity, then that means it was clearly established as of 2001. The plaintiff has to win both prongs. So the court in D'Orly, in Glenn, in George, actually not in George, did both prongs. Did both underlying constitutional violation and whether the officers were entitled to and said no on both counts. Going back to your question, Judge Tallman, I just want to... There are two interlinking sets of cases here. There's Glenn and D'Orly, which say that to use a beanbag shotgun, you must face an immediate threat. Glenn says that on page 873 of that case. You need an immediate threat. And then George and Lopez say that an officer does not reasonably perceive an immediate threat just because the person's hand is on a gun when the officer arrives. It's different if the person's hand is not on the gun when the officer arrives. If he reaches for the gun... How do you respond to Mr. Franz's argument, which seems to make sense to me, that if Mr. Diamond is holding the gun in the kangaroo pocket, it takes very little to simply point and shoot. I mean, does he have to wait until there's some movement before he can deploy the beanbag? Why is it not sufficient as a matter of law when the officer makes multiple commands to show us your hands and the subject refuses all of those commands? And knowing that he's armed and has his hands on the gun in the kangaroo pocket, why is it impermissible to use less lethal force like beanbags and tasers? So two parts of that, Your Honor. First, in George, it was the same situation. The decedent had his hand on the gun. The gun was in his hand. And this court said that alone isn't enough to create an immediate threat. There must be something more, some furtive movement, some harrowing gesture, some serious verbal threat. And the court did say he doesn't need to wait until the gun is pointed at him. But if he's heavily intoxicated and resisting all lawful commands and he literally need only point and fire. The same was true in George. I mean, I just, I'm having a hard time understanding why a reasonable officer in those circumstances would not find it objectively reasonable to deploy less lethal force to disarm an armed subject who need only point and fire. So a few, a few factual reasons, Your Honor. I think George, as far as the legal side of it, George is really our best case. It goes through the analysis, I think, very lucidly about when an officer can reasonably perceive an immediate threat from a person who has his hand on a gun if the hand is on the gun when the officer shows up. It's different. If he reaches for the gun, you can assume he intends to use it. But if he's got the gun when the officers show up, he needs something more. That's what George, that's what Lopez said. And I guess my question assumes that something more is the other factors. I forgot to mention the comments that he'd made, you know, about this is going to end one of two ways either. Whether we didn't know about that, whether we didn't know about that, he didn't know about all I have to take is 10 steps. What whether he does know is that there's a trained crisis negotiator on scene doing his job. The diamond has been in this position for 10, 15 minutes and nothing has happened. If he's bent on suicide by cop, he's had all the opportunity in the world. It'll had his weapon right there. He could have done it. 10, 15 minutes have gone by. Nothing's happening. Whether he also knows because you can hear on the audio recording as he's walking up, Diamond's not talking about suicide by cop. He's not talking about self harm or harming anyone else. All he said is, I'm too old. I'm too tired. But fundamentally, whether doesn't that sound like I'm giving up on life? It could. A jury could find otherwise. Whether the officers reasonably perceived a threat is a fact question. The Supreme Court said so in a case called Tolan against Cotton. There, the purported threat was a young man has said, get your hands off my mom to the officer. And the officer said, well, I reasonably perceived a threat. And so I use force. And the Supreme Court said, OK, but a jury could find that a reasonable officer would have perceived not a threat, but a son's plea to stop an assault on his mother. So how a reasonable officer would have interpreted get your effing hands off my mother is a question of fact for the jury. That means that on interlocutory review, this court is bound by the district court's findings on that score. And the district court found at pages 26, 29 of the decision that no reasonable officer would have perceived a threat at the point of the beanbag or at the point of the taser or at the point of the ultimate shots. So your position is that that neither the beanbag nor the taser should have been deployed at all. That's right, Your Honor. Because as I was saying, when when constantly show up, nothing is happening. The scene is static. It's stable. It's been stable for so long that Deputy Thomas, who was surveilling from afar, has put his binoculars down. He's he's he's bored, essentially. Collinson shows up. The conversation is not tense. It's not about he's not saying I get shot. I thought Collinson ordered him to remove his hands, too, as he approached. Yes, Your Honor, he did. And he refused that command. Yes, he did. The crisis negotiator, Deputy Adel, was doing his job. It was not complete. And I just want to highlight the timeline here for Your Honor. The first command to the beanbag shotgun is all of 32 seconds. So Adel has been on scene. But I mean, so the circumstances are tense, uncertain and rapidly evolving, as the Supreme Court said in Graham versus Connor. They were not until Sergeant Collinson showed up. Your Honor, they were they were not rapidly evolving at all. They were quite slow. Nothing was happening. As I said, Deputy Thomas put his binoculars down. Nothing was going on. Adel was talking this guy off. I'm trying to look at this from the standpoint of of Sergeant Collinson and Officer Weatherby as opposed to sort of what was known generally. Of course. And as I understand, Collinson had reviewed all of the computer assisted dispatch records on the prior conversations between the Clackamas County Sheriff's Office and Mr. Diamond. That's right. Right. And then did Weatherby and Boyce had also reviewed the CAD information en route? I think that's right, Your Honor. Okay. And the only thing they didn't know was what the crisis negotiator had. Accomplished in 10 or 15 minutes. 10 or 15 minutes that he'd been talking with. That's right. And one other point on the CAD records. One of the things that my friend, Mr. Sciocco, asserted is that Collinson had already fired his gun once. That is that contradicts what the district court found. His gun or the taser? No, that's right. You said Collinson.  Sorry, I meant-  He insists that Diamond had already fired his gun once. The district court- And take that into account. That's correct, Your Honor. Because the district court held that the officers lacked any reasonable belief that Diamond had fired his gun once. So that's not something- So the only thing they knew was a loud pop had been heard. He knew that there was a loud pop. And he knew, because Adel told him, based on what happened afterwards, there was a loud pop, a few seconds elapsed, then the call cut out, and then the phone was off for some reason. Adel said, it seems like he's just pretending. And then Collinson testifies on the record, he admits that he thought Diamond was only pretending to fire his gun. He says that at pages 89 and 137 of the supplemental excerpts and 111 of Weatherby's excerpts. So as he's driving up, he's not thinking Diamond has fired a shot. He's thinking Diamond is pretending to fire a shot. But we can take into account that he had a gun or that the officers reasonably believed he had a gun in his kangaroo pouch, not brandished. That's right. And his hand was in the pouch. And he was noncompliant with the orders to take his hand out of the pouch. He was noncompliant for all of 32 seconds, Your Honor. I think if Collinson had continued to give commands and- How long do you think he would have had to wait? There's a point in the record where the trial counsel asks Collinson if de-escalation had gone on for an hour and a half, would that be okay? And Collinson deflects because the answer is, of course. If de-escalation goes on for an hour and a half and it works, that's a superior outcome. Was it Boyce who testified that he saw the imprint of the gun? I think at least two of the officers testified that they saw the imprint, Your Honor. Saw the imprint. So I mean, we accept that- So you're not- and the gun was found at the scene after the body was- Yes. So the officers reasonably believed he had a gun. I don't think we can test that. But in George, the officers saw the gun. It's in the guy's hand. It's exactly the same. He can raise his hand and shoot at any time, or he can shoot from the hip at any time. In Lopez, the boy has a, it's a replica, but he's got the gun. And not only does he have the gun, he turns around and the gun-  Napook is one where he was brandishing what they thought was a sword, I guess, and then it ended up not being a sword. But I thought they said that it was okay. It was not a constitutional violation to use nonlethal force in that circumstance. I think that's right. But he brandished it and came at the officers with it, if this is the case that I think of correctly. I think Glenn discusses it. And Glenn, much like George, goes into this distinction. Well, Glenn wouldn't have discussed it. And Napook was like in the last year or two. Oh, then I'm sorry. I'm just not familiar with that one. Okay. But there are other sword cases. Glenn discusses at least one sword case. So where does everything else stand? Back to where we're at globally. Is the county in this below and is Boyce is still a defendant? And that's summary judgment's been denied. That's right, your honor. For the county and Boyce? I don't know about the county. Since only the- Assumably that will, I guess, go to trial with them. That's right, your honor. So you do have the heart of you. I mean, the tragic part of the case, the actual death shot, that is going to go to trial. That's true. What we're dealing with here is the escalation before that. The uses of force beforehand, which are independent constitutional violations. And in Glenn, this court did analyze them separately. What's your response to the applicability of Peck, our decision in Peck to this case? I think Peck is absolutely right. Peck distills previous cases explaining when someone is an integral participant in another's constitutional violation and says there are two ways to get there. There's the common plan way, which the district court said that that was satisfied. And we don't fight with that, obviously. But we think that the second path that Collins- That it was not satisfied. It said that it was satisfied. The district court said that both paths were satisfied. But we don't need the first path. We focus on the second path here, whether Collinson set in motion a series of acts by others that he knew or reasonably should know would cause the other to inflict constitutional injuries. Your theory seems to be that because Sergeant Collinson wanted to have lethal cover as he approached- It's significantly more than that, Your Honor. Well, let me finish my question. Of course. When he approached and that he was going to, if necessary, go hands on with the guy and was to provide the beanbag cover, why is it unreasonable to assume that Officer Boyce is not going to fire unless he is presented with a situation where there is immediate danger to the two other officers who do not have access to firearms? Because it's simply just not that. It's Collinson rushes in into point blank range of what everyone assumes but doesn't know is Diamond's weapon. And then he yells gun, even though he hasn't seen a gun. This is under the district court's facts, which this court lacks jurisdiction to review. Diamond didn't pull his weapon at all. He wasn't tugging and- But Collinson did say gun, gun, gun. Did he not? He did, but he didn't see it. That is a warning to all the officers on the scene that the subject has a firearm and is about to use it. But the district court found that a jury could reasonably find that Diamond did not pull his weapon, did not do anything. The hand remained in the pocket. The arm remained down by his side. The gun remained in the pocket. But again, for the integral participant theory, I'm trying to understand your argument as to why it would be unreasonable for an officer on the scene to deploy less lethal force in the facts that were- Sorry, the integral participant argument is about the lethal force. Yeah. No, I thought Peck. Yes. Okay. But this is the foreseeability of the use of lethal force. And I think it's 100% foreseeable that if you run into close range with someone who has a gun and yell gun while someone's providing lethal cover, they will do their job and provide lethal cover. That's what happened here. Now, if Collinson had seen a gun, that's a different story. And he insists on page seven that he did see a gun, but the district court held that he couldn't see a gun, that Diamond didn't pull his gun, that Diamond kept his arm down by his side, his hand in his pocket. So Collinson yelled gun without seeing gun. And that's the key fact that turns us from a constitutional use of lethal force to an unconstitutional one. And since Collinson yelled gun, that makes him liable as an integral participant. And I should say, in our answering brief, we were under the impression that Collinson did not contest the district court's view of the facts for his integral participant argument. In his reply brief, he clarifies he does. On page seven, he insists that he saw the gun. So that contradicts what the district court found. And so the integral participant liability question is also outside this court's jurisdiction. Well, that fact might be. But I don't know that that puts in. When the officer's predicate facts are outside this court's jurisdiction, the officer has not made an argument that's within this court's jurisdiction. This court explained that very lucidly in an unpublished case, Maddox, when an officer only makes arguments based on facts that the court cannot rely on in this posture, then the officer has forfeited the arguments that the court can. So let me make sure I understand your argument correctly. You don't dispute that Collinson yelled gun, gun, gun. And as a result, the other officers did what they did. That's right, Your Honor. The question you're I guess you're questioning whether or not Collinson actually saw a gun. That's right, Your Honor. Does that matter with regard to Weatherby's decision to deploy the beanbag round? The beanbag was before Collinson yelled gun. OK. So you're only saying as to Boyce.  For that. This is going to the liability of Sergeant Collinson for what shot was taken that was  But I'm still trying to work through this. There's not a dispute that he in fact did have a gun and that the officers perceived that he had a gun. So at some point, I'm beginning to wonder, I mean, there's a difference in terms of readiness or actual deployment, but the knowledge that there was a gun really isn't disputed. That's right, Your Honor. And he's not he's not yelling. He's about to shoot. He's pulling out a gun. He's simply saying gun. So is the difference between it isn't knowledge. It's the movement that would suggest deployment. I think running into close range point blank range and then yelling gun is there's only one reasonable explanation of that, which is that this guy is about to use his gun. Right. And the gun was found on the ground next to the body. Was it not? That's right. No dispute that he has a gun. So did the gun came out of the pocket at some point? I guess I guess what I'm now questioning is whether or not the district court had a had a factual basis to conclude that Collinson didn't see a gun. That doesn't make any sense to me based on what he said. Your Honor, the district court made these factual findings. We found a genuine dispute in Peck. This court explained that even when this court perceives room for disagreement about whether the district court correctly resolved the question of genuineness on interlocutor appeal, that question is outside this court's jurisdiction. This court has to take the facts. I'll quote from Johnson against Jones here must take as given the facts that the district court assumed when it denied summary judgment, even when the evidence points to the opposite conclusion because the gun was found on the ground separate from the body that it came out of the kangaroo pocket. There are other ways that it can come out of the kangaroo pocket. I mean, he's fallen down. There's momentum going on. A kangaroo pocket is quite open. A jury can reasonably find that it was in his pocket until he was tackled and then thrown to the ground. And that's what the district court found. And so this court has to take that fact as given on interlocutory review. I see that my time is long expired, so I'll just conclude with this because the officers only you've watched us today. You know, sometimes we run out the clock and then some take the time that you need because the officers make only arguments that are based on facts that the district court found to be untrue at summary judgment. The officers' arguments are all outside this court's jurisdiction. Well, I'm not so sure. I think there's an issue here that needs to be resolved as a matter of law. And to the extent that our cases could be interpreted to say that less lethal force may never be used, then I think that needs to be addressed in our decision. I don't think the cases, we're not arguing that the cases say that less lethal force may never be used. They just can't be used 32 seconds in when less intrusive means are on the scene doing their job. It's working. The guy is calm. The situation is stable. Yeah, I'm not. I'm not so sure. I agree with your characterization that the scene was secure. It was stable. I'm not saying it was secure, but it was stable. Nothing had changed. Deputy Thomas put his binoculars down because nothing was going on. I think you and I are just going to go back around and around. OK, if the court does reach the merits, the court should affirm. Based on cases like George, Glenn, Lopez and Dior, all those cases together clearly established that the use of force here was unconstitutional. OK, thank you. Thank you, Your Honors. And you've got a minute for rebuttal. Thank you, Your Honors. Just by way of rebuttal, a few quick points that I would like to hit on. I would disabute the fact whether or not the district court found that Collinson never saw the gun. The district court did clearly find there was a dispute of fact as to whether Mr. Diamond drew the gun, removed it completely from his pocket, that it was never found specifically that Sergeant Collinson didn't see the gun or, frankly, sense the gun. He could have felt it as he was reaching in. We do know he yelled gun. We do know there was, in fact, a gun. None of those facts are in dispute either at the district court level or before, Your Honors. A quick point as to whether or not Mr. Diamond ever fired his gun that day. The relevant question, the material fact is not whether he, in fact, fired that gun, but whether Sergeant Collinson believed that gun had been fired, which he indisputably did believe based on the family's reports. And the gun was loaded with an extended magazine. Correct. Which correct could easily have gotten caught up in the pocket of the kangaroo pocket. Right. And again, Sergeant Collinson easily could have seen part of that gun without the gun being completely drawn. I would also point out that the progress, quote unquote, progress of the crisis negotiator, Deputy Adele. The trial court and plaintiff put too much weight and create a cause and make a legal error by relying on that progress as an indicator that there was no threat there. And the reason is because this court, this reviewing court and the trial court should have construed the facts based on what Sergeant Collinson perceived and what he was aware of. And there is no dispute in this record. The deputy Adele said, once I confronted Mr. Diamond because of the threat he posed, frankly, I stopped communicating on the radio. In fact, he stayed behind a tree. He stayed away from Mr. Diamond because of the threat. But the bottom line is he was not relaying any progress he might be making to Sergeant Collinson. So when Sergeant Collinson was there, all he saw was one deputy behind a tree and he had no more information. So what he perceived was, in fact, that threat. And so I would submit to the court that on the undisputed facts of this case, again, based on Mr. Diamond's conduct. That Sergeant Collinson reasonably perceived a threat, even though the district court said there might be a question of fact as to the degree that that threat actually existed. That's not the right legal standard. OK, perception. Thank you. Thank you to both counsel for your all counsel for your arguments in the case. The case is now submitted. And that concludes our arguments for the day.
judges: TALLMAN, CLIFTON, NELSON